UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  08-60177-Civ-Altonaga/Turnoff

MATTHEW K. GAISSER,
on behalf of himself and
all others similarly situated,

                              Plaintiff,

              v.

PORTFOLIO RECOVERY
ASSOCIATES, LLC,
ROBERT J. OROVITZ, P. A.
d/b/a HAYT, HAYT & LANDAU,
ROBERT J. OROVITZ,
and JOSEPH D. ALLEN,

                       Defendants.
_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**

**I.**     **INTRODUCTION**

    Defendants have repeatedly ignored the applicable statute of limitations and dragged

unwitting consumers into the Florida state court system after the applicable law prohibits them

from doing so. On top of this violative conduct, Defendants put themselves in the shoes of the

judiciary by unilaterally determining the amount of "reasonable attorney fees."

    Defendants' conduct violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et

seq*., ("FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*.

("FCCPA"), which were enacted to prevent this type of unfair and unconscionable conduct.

    Defendants move to dismiss based on several arguments that leave no argumentative

stone unturned. Indeed, they first ask this Court to ignore United States Supreme Court precedent

and the nationwide consensus that the litigation privilege does not apply to the FDCPA. Second,

they ask this Court to ignore the choice-of-law provision in the contract that Portfolio's predecessor drafted, and to ignore the Florida courts that correctly and routinely apply the choice-of-law state's statute of limitations. Third, they ask this Court to ignore reason, common sense, and good conscience by maneuvering their way through New Hampshire law to spawn an infinite statute of limitations, something the Supreme Courts of New Hampshire and several other states have already rejected. Finally, they again ask this Court to ignore the plain terms of the contract that Portfolio's predecessor drafted and, instead of the judicial evaluation required to determine an amount of reasonable attorney fees, they instead ask this Court for permission to make that determination unilaterally and in unchallenged fashion with the hope and expectation of obtaining a default in every collection case they file.

Defendants herein routinely ignore the caselaw that expressly rejects their arguments and other caselaw that merely supports Plaintiff's case. Instead they cherry-pick quotes and cite caselaw and a statute that are only relevant and applicable upon a stretching of the opinions' plain and statute's intended meanings.

Defendants' Motions to Dismiss should be denied.

## II.    <u>ARGUMENT</u>

Defendants put forth four arguments[1] in support of their Motions to Dismiss. Defendants' arguments fail and their Motions should be denied.

### A.    The litigation privilege does not extend to Defendants' conduct.

Defendants argue that the litigation privilege affords them immunity. <u>See</u> Orovitz Defendants' Motion to Dismiss, pp. 3-4. Defendants are wrong. Their argument is contrary to the FDCPA's plain language. Indeed, in <u>Heintz v. Jenkins</u>, 514 U.S. 291 (1995), a unanimous

---

[1]    Defendants Robert J. Orovitz, P.A. d/b/a Hayt, Hayt & Landau and Robert J. Orovitz move to dismiss based on each argument to which Plaintiff responds herein. <u>See</u> Docket # 56. Defendant Portfolio Recovery Associates, LLC ("Portfolio") moves to dismiss based solely on the argument that the New Hampshire statute of limitations was tolled (Paragraph II-C below). <u>See</u> Docket # 59.

Supreme Court held that the FDCPA, "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation*[,]" Heintz, 514 U.S. at 299 (emphasis added); See also Todd v. Weltman, Weinberg & Reis Co., L.P.A., 434 F.3d 432 (6th Cir. 2006) cert. denied 127 S.Ct. 261, 166 L.Ed.2d 151(Oct. 2, 2006) (rejecting defendant attorneys' litigation privilege assertion as a bar to the plaintiffs' FDCPA claims based upon their alleged state court lies); Steffes v. Stepan Co., 144 F.3d 1070 (7th Cir. 1998) (rejecting that the litigation privilege was a bar the plaintiff's federal claims).

The U.S. Courts of Appeals for the Fourth Circuit and the Sixth Circuit have recently rejected similar arguments by collection law firms for absolute immunity in FDCPA cases.  In Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 230 (4th Cir. 2007), the Fourth Circuit concluded:  "The statutory text makes clear that there is no blanket common-law litigation immunity from the requirements of the FDCPA."  In Todd, 434 F.3d at 437-47, an FDCPA case arising from an affidavit filed in a garnishment proceedings, the Sixth Circuit held that absolute immunity was not applicable to the FDCPA claim and was reserved for individuals serving the judicial process, not to assist a party who allegedly lied in an affidavit to initiate a garnishment action.  See also Kelly v. Great Seneca Fin. Corp., 447 F.3d 944 (6th Cir. 2006).

Furthermore, the District Court in Oei v. N Star Capital Acquisitions, LLC, 486 F. Supp. 2d 1089, 1098 (C.D.Cal. 2006), has stated that it is "well settled that the California litigation privilege does not apply to federal causes of action, including FDCPA claims."  The debt collector's claim of litigation privilege is contrary to the weight of the law. Chavez v. Bowman, Heintz, Boscia & Vician, 2007 U.S. Dist. LEXIS 61936, *5 (N.D.Ill., Aug. 22, 2007).  The litigation privilege is inapplicable to claims under the FDCPA.  Irwin v. Mascott, 112 F.Supp.2d 937, 962-63 (N.D. Cal. 2000).

Furthermore, Defendants disregard that absolute immunity serves no purpose with regard to the facts of this case.  "[A]bsolute immunity is the exception rather than the rule, and has

traditionally been reserved for those actors 'intimately associated with the judicial phase of the criminal process.'" Imbler v. Pachtman, 424 U.S. 409, 430 (1976). The Supreme Court generally presumes "'that qualified rather than absolute immunity is sufficient to protect the government officials in the exercise of their duties.'" Burns v. Reed, 500 U.S. 478, 486-87 (1976). In Imbler, the Supreme Court extended absolute immunity, previously available at common law, to protect prosecuting attorneys who are sued under 42 U.S.C. § 1983 for alleged deprivations of a criminal defendants' constitutional rights committed while the prosecutors were acting within the scope of their duties in initiating and pursuing criminal prosecutions. The Supreme Court rejected the application of qualified immunity, finding absolute immunity justified by the "concern that harassment by unfounded litigation [might] cause a deflection of the prosecutor's energies from his public duties, and the possibility that [the prosecutor] would shade his decisions instead of exercising the independence of judgment required by his public trust. Imbler, supra 424 U.S. at 423.

In telling fashion, Defendants cite no cases that even address the litigation privilege in a FDCPA case, much less a single case that actually sustains the privilege in a FDCPA case. Indeed, Defendants cite Levin, et al. V. U.S. Fire Insur., 639 So.2d 606 (Fla. 1994), Echevarria, et al. v. Cole, 90 So.2d 380 (Fla. 2007), and Jackson v. Bellsouth Telecomms., 372 F.3d 1250 (11th Cir. 2004), Boca Investors Group, Inc.v. Potash, 835 So.2d 273 (Fla. 3d DCA 2002), and McCorriston v L.W.T., Inc., 2008 U.S.Dist.LEXIS 13343 (M.D.Fla., Feb. 22, 2008). Plaintiff does not dispute that there exists a common law litigation privilege in the State of Florida. However, none of these cases analyze the litigation privilege as a defense to FDCPA claims. Nor do these cases discuss Sayyed v. Wolpoff & Abramson, supra, or Todd v. Weltman, Weinberg & Reis Co., L.P.A., supra. Defendants did not discuss or cite either federal appellate decision in their brief. As these two Circuits have held, the state litigation privilege does not apply to federal FDCPA claims.

4

Other District Courts have also rejected the request to apply the litigation privilege in FDCPA cases. In <u>Barany-Snyder v. Weiner</u>, 2007 WL 210411 at *9, 2007 U.S. Dist. LEXIS 5137 (N.D. Ohio, January 24, 2007), the court rejected debt collectors' claims of immunity in an FDCPA case and stated: "The Court agrees with Plaintiff and other courts to address the issue that any litigation immunity doctrine is trumped by the Court's holding in *Heintz*." *Id.* (citations omitted). In <u>Hartman v. Asset Acceptance Corp.</u>, 467 F.Supp.2d 769 (S.D. Ohio 2004), the court rejected the debt collector's claim of absolute witness immunity. "Given the broad language of the statute, and the absence of any firmly rooted absolute immunity for a private plaintiff initiating a civil lawsuit with an allegedly false affidavit, the Court cannot conclude that Asset is absolutely immune from FDCPA liability based on the common-law witness immunity doctrine." *Id.* at 776. Furthermore, <u>Hartman</u> held: "The Court concludes that the state law `litigation privilege' does not bar plaintiff's FDCPA complaint arising out of an affidavit filed in state court." *Id..* at 778. In <u>Foster v. Velocity Invs., LLC</u>, 2007 WL 2461665, *4, 2007 U.S. Dist. LEXIS 63302, *10 (N.D.Ill., Aug. 24, 2007), the court explained: "Because Plaintiffs assert federal rather than state law claims, Plaintiffs' claims arising under the FDCPA are not barred by the Illinois Litigation Privilege." <u>See also</u> <u>Agan v. Katzman & Korr</u>, 2004 U.S.Dist.LEXIS 4158, *2 (S.D.Fla., Mar. 16, 2004); <u>McKnight v. Benitez, et al.</u>, 176 F.Supp.2d 1301 (M.D.Fla. 2001) (filing state court complaint in improper venue violates FDCPA).[2]

---

[2]     <u>See also</u> <u>Gionis v. Javitch, Block & Rathbone</u>, 405 F.Supp.2d 856, 863-64 (S.D.Ohio 2005) (listing five S.D.Ohio cases from 2004-2005 that rejected the litigation privilege in FDCPA cases, in which the Courts "discussed at length their reasons for rejecting the claims of immunity"); <u>Blevins v. Hudson & Keyes, Inc.</u>, 395 F.Supp.2d 655, 658-660 (S.D. Ohio 2004); <u>Weniger v. Arrow Fin. Servs. LLC.</u>, 2004 U.S. Dist. LEXIS 23172, *10 (N.D.Ill., Nov. 18, 2004) (common law litigation privilege does not bar an FDCPA claim). This argument has been "repeatedly rejected" by the Souther District of Ohio. <u>Miller v. Wolpoff & Abramson</u>, 321 F.3d 292 (2nd Cir. 2003) (verified complaint filed in state collection action by defendant attorneys subject to FDCPA); <u>Gearing v. Check Brokerage Corp.</u>, 233 F.3d 469 (7th Cir. 2000) (debt collector and its attorney's complaint incorrectly alleged it was "subrogated" to rights of creditor, subject to FDCPA); <u>Long v. Shorebank Dev. Corp.</u>, 182 F.3d 548, 554 (7th Cir. 1999) (filing state court complaint seeking rent not owed); <u>Stolicker v. Muller, Muller, Richmond, Harms, Myers, Sgroi, P.C.</u>, 2005 WL 2180481 at * 5 (W.D.Mich. Sept. 9, 2005) ("as a matter of law, the Muller law

Therefore, Defendants' litigation privilege argument must be rejected.

**B.    The State Court lawsuit was filed outside New Hampshire's statute of limitations, which applied because the statute of limitations is substantive.**

Defendants claim that the statute of limitations is procedural, citing a case from the Seventh Circuit. <u>See</u> Orovitz Defendants' Motion to Dismiss, p. 4.  Defendants also claim that choice-of-law provisions do not apply to statutes of limitations and cites Third and Tenth Circuit Court cases. <u>See</u> Orovitz Defendants' Motion to Dismiss, p. 5.  Notably, Defendants cite no Florida state cases or relevant federal cases. Due to their lack of controlling caselaw, it is not surprising that Defendants are wrong on both fronts, at least as it applies to this case and Florida. Indeed, the Florida Supreme Court has stated, "Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." <u>Mazzoni Farms v. E. I. Dupont</u>, 761 So.2d 306, 311 (Fla. 2000). "Moreover, it is incumbent upon the party seeking to avoid enforcement of the provision to show that the foreign law contravenes public policy of the forum jurisdiction." <u>Id.</u> citing <u>Udelhomme Indus., Inc. v. Houston Beechcraft, Inc.</u>, 669 F.2d 1049, 1059 (5th Cir. 1982) ("A choice of law provision in a contract is presumed valid until it is proved invalid. The party who seeks to prove such a provision invliade because it violates public policy bears the burden of proof.").

---

firm's false affidavit violated § 1692e"); <u>Jacquez v. Diem Corp.</u>, 2003 U.S.Dist.LEXIS 8333 (D.Ariz. February 20, 2003) (writ of garnishment signed by debt collector subject to FDCPA); <u>Irwin v. Mascott</u>, 112 F.Supp.2d 937, 952, 962-63 (N.D. Cal. 2000) (sending consumers complaints that the attorney never intended to file); <u>Campos v. Brooksbank</u>, 120 F.Supp.2d 1271, 1274 (D.N.M. 2000) (liable for litigation actions taken within the statute of limitations although collection suit filed beyond statute); <u>Gray-Mapp v. Sherman</u>, 100 F.Supp.2d 810 (N.D.Ill. 1999) (filing inflated claim in bankruptcy proceeding); <u>Tomas v. Bass & Moglowski, P.C.</u>, 1999 U.S. Dist. LEXIS 21533 (W.D.Wis., June 29, 1999) (summons and complaint filed in state replevin action subjected attorney to FDCPA liability); <u>Blakemore v. Pekay</u>, 895 F.Supp. 972, 983 (N.D. Ill. 1995) (FDCPA claim based on affidavits filed in state court proceeding); <u>Strange v. Wexler</u>, 796 F.Supp. 1117 (N.D. Ill. 1992) (holding defendant attorney seeking attorney's fees which were not available under state contract law principals); <u>Kolker v. Duke City Collection Agency</u>, 750 F.Supp. 468 (D.N.M. 1990) (a collection agency violated the FDCPA by filing collection litigation in contravention of state law restraints on unauthorized practice of law);  <u>Kimber v. Federal Financial Corp.</u>, 668 F.Supp. 1480, 1487 (M.D.Ala. 1987) (a collection agency violated §1692f by filing a time-barred suit).

In <u>Burroughs Corp. v. Suntogs of Miami, Inc.</u>, 472 So.2d 1166 (Fla. 1985), the Florida Supreme Court addressed a situation where the parties agreed to a choice-of-law provision which selected the laws of Michigan to control. <u>Id.</u> The Florida Supreme Court stated, "the contractual provision shortening the period of time for filing a suit was not contrary to a strong public policy." <u>Id.</u> at 1169.

In a case in which the defendants argued that Florida's statute of limitations should apply notwithstanding the choice-of-law provision selecting Delaware law, the Middle District of Florida stated, "Absent an argument by Defendants that Delaware law contravenes strong public policy of Florida, Delaware law applies to substantive matters, including the statute of limitations." <u>McCorriston v. L.W.T., Inc.</u>, 2008 U.S.Dist.LEXIS 13343, *16 (M.D.Fla. Feb. 22, 2008) (emphasis supplied).[3]  The Court concluded, "Defendants have made no such public policy argument. Accordingly, Delaware's statute of limitations applies." <u>Id.</u>

The Florida Supreme Court cases, as well as the Middle District of Florida case, are on point as applied to this statute of limitations issue. The parties chose New Hampshire law to apply. Because the statute of limitations is a substantive issue, New Hampshire's three-year statute of limitations should apply.

Though apparently no Florida appellate level court has addressed this specific issue, the Florida trial courts uniformly apply the choice-of-law state's statute of limitations. The following are collection actions almost identical to the subject state court case, where the underlying contract contained a choice-of-law provision. The trial courts routinely apply the choice-of-law state's statue of limitations instead of Florida's.

_____

[3]      Plaintiff earlier distinguished <u>McCorriston</u> in the context of authority for Defendant's claimed litigation privilege. Plaintiff has not disputed <u>McCorriston</u>'s authority for the recitation of legal principles related to the existence of a litigation privilege. However, <u>McCorriston</u> did not address the application of the privilege to a FDCPA case, which is the focused issue in this case regarding the privilege. Therefore, <u>McCorriston</u>'s authority is hollow as to the application of the litigation privilege in this case. However, <u>McCorriston</u>'s recitation of other legal principles, such as is quoted in this section

In ruling on a motion to dismiss in a Florida state court credit card collection case, the Court found that the action was controlled by Delaware law pursuant to the Cardmember Agreement. See L.W.T., Inc. v. McCorriston, Case No. 06-cc-8298-J, County Court of the 13th Judicial Circuit of the State of Florida, J. Fernandez, October 13, 2006, ¶ 1, attached hereto as Exhibit 1. The Court then applied the Delaware statute of limitations and dismissed the case. Id. at ¶¶ 2-7.

In a decision almost identical to this case – involving the same debt collector (Portfolio Recovery Associates) and the same credit card issuer (Providian National Bank), and presumably the same contract – the Florida Court stated, "The account agreement indicated that New Hampshire law governed the relationship of the parties under the agreement. Under New Hampshire law, the claims brought in this case are subject to a three-year statute of limitations. ... This lawsuit was not filed under September 2007, more than three years after the undisputed accrual of the cause of action on the purported debt." Portfolio Recovery Associates, LLC v. Smith, Case No. 07-sc-4319, County Court for the 2nd Judicial Circuit of the State of Florida, J. Shelfer, December 3, 2007, 15 Fla.L.Weekly Supp.169a. (2007), attached hereto as Exhibit 2.

In Capital One Bank v. Gelsey, Case No. 16-2006-SC-000882, County Court for the 4th Judicial Circuit of the State of Florida, J. Flower, July 3, 2007, 15 Fla.L.Weekly Supp. 64a (2007), attached hereto as Exhibit 3, Capitol One sued a consumer for an overdue MasterCard debt. The applicable contract contained a choice-of-law provision selecting Virginia law to apply. The case was filed outside the applicable Virginia statute of limitations. The Court granted the consumer's motion to dismiss, applying the Virginia statute of limitations.

Defendants cannot dispute the actions taken by Florida state courts on this issue. This Court should follow the Florida state courts' lead on this state law question of contract

---

regarding the substantive nature of statutes of limitations, are controlling here.

interpretation and applicability and find that New Hampshire's statute of limitations rightly applies.

Defendants rely primarily on <u>Keeton v Hustler Magazine</u>, 549 A.2d 1187 (N.H. 1988), to advance their strained argument that the Florida statute of limitations should apply. However, <u>Keeton</u> could not be more irrelevant and distinguishable. As acknowledged by Defendants in their brief, the <u>Keeton</u> plaintiff filed suit in New Hampshire "[b]ecause the statute of limitations ha[d] run on Keeton's libel claim in every State but New Hampshire." <u>Keeton</u>, 549 at 1190. The New Hampshire Supreme Court observed that New Hampshire was "the forum for a suit in which one ore more other States also have an interest..." <u>Id.</u> at 1191. Moreover, the <u>Keeton</u> case was decided within the framework of a "case in which either party is a New Hampshire resident or the cause of action arose in [New Hampshire]." <u>Id.</u> at 1192. <u>Keeton</u> did not address a situation where a choice-of-law provision selected New Hampshire as the controlling law in a foreign forum.

Plaintiff's last payment on the subject debt was made on April 10, 2003. <u>See</u> Complaint, ¶ 12, Docket # 1. Defendants filed the subject state court lawsuit on February 8, 2007. <u>See</u> Complaint, ¶ 15. Therefore, the state court lawsuit was barred by New Hampshire's three-year statute of limitations. Defendant's Motion to Dismiss must be denied.

### C.     Tolling New Hampshire's Statute of Limitations Would Produce an Absurd and Unconscionable Result.

Defendants argue that, even if the New Hampshire statute of limitations applies, it was tolled by Plaintiff's absence from the State of New Hampshire. <u>See</u> Orovitz Defendants' Motion to Dismiss, pp. 8-11; Portfolio's Motion to Dismiss, pp. 1-3. Defendants are wrong. Although they do not state it in so many words, Defendants request this Court to hold that the applicable statute of limitations is infinite.

First, the result Defendants request is patently unconscionable. They desire an infinite statute of limitations because the contract chooses New Hampshire law to apply and Defendants knew that Plaintiff never lived in New Hampshire.

Portfolio's predecessor contracted with Plaintiff and drafted the contract's non-negotiable terms, which included a choice-of-law provision selecting New Hampshire law to apply. Portfolio's predecessor sent billing statements to Plaintiff in Florida, knowing throughout their relationship that Plaintiff resided in Florida. During the entirety of their relationship, including after Plaintiff's default, the relevant parties knew where Plaintiff resided and could have served process on him without problem or delay. Indeed, Defendants served Plaintiff in Florida. However, they chose to proceed within Florida's statute of limitations even though trial courts had routinely applied the choice-of-law state's statute of limitations. Now, they suggest that because New Hampshire's statute of limitations applies, they should benefit from the tolling provision that, under the instant facts, creates an infinite statute of limitations. This result is unconscionable.

Second, New Hampshire's tolling provision should not apply to the instant factual scenario. In a case ignored by the Orovitz Defendants and inconceivably cited by Portfolio in support of its Motion, the Supreme Court of New Hampshire stated that the policy and rationale behind the tolling statute did not support an indefinite statute of limitations merely because the defendant resided outside New Hampshire. Bolduc v. Richards, 101 N.H. 303 (N.H. 1958). The case concerned a personal injury claim arising from a motor vehicle accident in New Hampshire; the applicable statute of limitations of such a claim was six years. Id. at 304. The case was filed more than six years after the accident. Even though the defendant was out of state, the plaintiff was permitted by statute to serve the defendant by service on the Motor Vehicle Commissioner. Id. At 305.

Discussing the policy and reasoning behind the tolling statute, the Court cited previous opinions rendered by the Supreme Court of New Hampshire. In <u>Gilman v. Cutts</u>, 23 N.H. 376 (N.H. 1851), the Court stated that the intention of the legislature was to consider "any and every absence, whether temporary or otherwise, which is such that the creditor cannot, during the same, make a legal service upon the debtor..." <u>Gilman</u>, 23 N.H. at 385. In <u>Quarles v. Bickford</u>, 64 N.H. 425 (N.H. 1887), the Court stated, "In order to prevent the running of the statute of limitations, the debtor's absence from the state must be such that process cannot be so served upon him that the judgment obtained in the suit will bind him personally." <u>Quarles</u> 64 N.H. at 426.

The Supreme Court of New Hampshire stated, "There are compelling considerations of policy favoring the majority rule since to hold otherwise would allow suits to be postponed indefinitely." <u>Bolduc</u>, 101 N.H. at 306. The Court concluded:

> We should not ascribe to our Legislature an intent which would lead to such unfortunate consequences.  Had the Legislature desired to change existing law so as to afford the plaintiff the latitude of permitting him to allow his case to drag on indefinitely at his option, even though he could get valid service upon the defendant, so long as the latter remained out of the state, it presumably would have said so.

<u>Id.</u>

In another case ignored by Defendants as to this issue, the Middle District of Florida stated regarding the Delaware tolling statute, "The Supreme Court of Delaware has correctly observed that the blanket application of the tolling statute to cases involving non-resident defendants, as Defendants urge here, 'would result in the abolition of hte defense of statutes of limitation in actions involving non-defendants.'" <u>McCorriston</u>, 2008 U.S.Dist.LEXIS at *18 <u>quoting</u> <u>Hurwitch v. Adams</u>, 52 Del. 247 (Del. 1959). The Middle District distinguished another Delaware case and rejected tolling the statute of limitations, stating that in <u>Saudi Basic Indus.</u>

Corp. v. Mobil Yanbu Petrochem. Col., Inc., 866 A.2d 1 (Del. 2005), the Court "noted that the plaintiff would not have been able to obtain personal jurisdiction over the foreign defendant in Delaware until it was present in the state and subject to service of process." McCorriston, 2008 U.S.Dist.LEXIS at * 19. The Middle District summarized the two Delaware holdings, stating that they "were premised on plaintiff's ability (or inability) to obtain personal jurisdiction over the non-resident defendant in Delaware. No such problem was present in Defendant's state court action. Plaintiff resided in Florida and was subject to personal jurisdiction in Florida." Id. at 20.

Summarizing the defendant's argument, the McCorriston Court stated,

> Defendant's construction of [Delaware's tolling statute] would indefinitely toll lawsuits filed in states other than Delaware, notwithstanding that those lawsuits were filed against account holders who were never in Delaware, but who are subject to service in the state in which the suit was filed. Such a construction would, as the court in *Hurwitch* noted, effectively 'result in the abolition of the defense of statutes of limitation in actions involving non-residents,' an absurd result.

Id. at 20. Concluding, the Middle District of Florida stated, "Simply put, Defendants are wrong about Florida's statute of limitations applying and wrong about the statute being tolled because McCorriston was not in Delaware." Id. at 21.

The Supreme Court of Washington provided the best analysis and discussion of this issue when it was confronted with the same issue regarding Washington's tolling statute. Summerrise v. Stephens, 75 Wn.2d 808 (Wash. 1969). The defendant was a resident of Washington but then moved to California. Id. at 810. The plaintiff commenced the case over ten years after the alleged tort, though the state statute of limitations barred claims after three years. Id. at 810-11. The defendant moved to dismiss because at all times relevant the plaintiff knew of the defendant's place of residence in California and was able, as he did eventually, to serve the defendant

pursuant to Washington's long-arm statute. Id. at 811. The trial court held that the statute of

limitations barred the case and dismissed it. Id.

The Supreme Court stated,

> In determining the legislative intent as to the effect of the
> applicability of the tolling statute, it is important to consider why
> the legislature thought it advisable to exclude the time when a
> defendant was absent from the state in computing the time limit for
> commencing actions as provided by our statute of limitations. The
> rationale of the tolling statute is that every absence from the state
> (or a period of hiding or concealment within the state) which
> prevents a plaintiff from making service upon a defendant -- that
> would give our courts an in personam jurisdiction
> -- should be excluded in computing the time within which a
> plaintiff must commence his action.
>
> To stop the running of the statute of limitations, a defendant's
> absence from the state (or concealment within it) must be such that
> process cannot be served upon him which would make possible a
> personal judgment against him.

Id.

The Court then cited, as "[o]ne of the best statements we have found as to the intent of

the tolling statute", the Supreme Court of New Hampshire's opinion in Bolduc, quoted and

paraphrased above. Id. at 811-12. The Court continued,

> The purpose of the statute of limitations is to compel actions to be
> commenced within what the legislature deemed to be a reasonable
> time, and not postponed indefinitely. However, the statute's
> operation could be tolled for what the legislature regarded as good
> reason, i.e., the inability to get personal service on a defendant by
> reason of his absence from the state. That reason having been
> removed in certain classes of cases by the long-arm statute, the
> tolling provision in such cases is no longer necessary, and the
> statute of limitations should again be permitted to perform its
> purpose of expediting litigation.
> There is a compelling consideration of public policy also favoring
> the answer we have given. To hold otherwise would allow suits
> against nonresidents of the state upon whom personal service can

be obtained to be postponed indefinitely. The evil results of long
delay are too obvious to require recitation. We should not ascribe
to the legislature an intent which would lead to such unfortunate
consequences.

Id. at 812 (internal citations omitted).

The Court then quoted 34 Am. Jur. *Limitations of Actions* § 221:

"Although there is respectable authority to the contrary, most
courts hold that under provisions tolling the statute of limitations
during the time the defendant is not resident in or is absent from
the state, the statute continues to run during the defendant's
absence, if process could be served notwithstanding such absence."

Id. at 813.

The Court quoted the Supreme Court of New Mexico, which stated in a similar case,

The majority rule and better-reasoned cases on this subject hold
that the tolling statute should not be applied if a defendant could
have been served with process, either actual or substituted, in
which event a defendant's absence from the state does not toll the
running of the Statute of Limitations.

It is obvious that the purpose of the tolling statute was to prevent
injustice by stopping the operation of the Statute of Limitations
where there could be no service of process. Where there may be
service, however, as under the 'long-arm' statute, the tolling statute
simply does not apply.

Id. quoting Benally v. Pigman, 78 N.M. 189, 191 (N.M. 1967).

Finally, the Court quoted the Supreme Court of Vermont, which stated regarding the

Vermont tolling statute,

Those provision were intended to apply only to defendants who,
for the reasons therein stated, are not amenable to service of
process under authority of this state with the two year period. To
hold the contrary would permit a plaintiff in such a case to defer
the institution of his action indefinitely, to the prejudice of a
defendant which would be in conflict with the purpose of P.L.
2860 as hereinbefore stated.

Id. at 814-15 quoting Reed v. Rosenfield, 115 Vt. 76, 79 (Vt. 1947).

The Supreme Court of Washington affirmed the trial court's dismissal, citing the New Hampshire, New Mexico and Vermont Supreme Courts, stating that "the tolling statute was not applicable under the circumstances." Id. at 815.

The Supreme Court of New Hampshire's interpretation of the New Hampshire statute must be followed by this Court. The tolling provision cannot be employed to create an infinite statute of limitations. This interpretation is bolstered by the similar interpretations by other states' Supreme Courts.

Defendants cite several cases in support of their argument. However, none interpret the tolling statute where there is an out of state forum, a choice-of-law provision selects New Hampshire law to apply, and where the state court defendant was amenable to service of process in the forum state during the entirety of the statute of limitations period.

The case Avery v. First Resolution Mgmt Corp., 2007 U.S.Dist.LEXIS 39260 (D.Ore., May 25, 2007), is very similar to the instant case, but produced the wrong result. The parties entered into a contract containing a choice-of-law provision selecting New Hampshire law. The Court noted that the plaintiff had not lived in New Hampshire before, during, or after the cause of action accrued. Avery, 2007 U.S.Dist.LEXIS at *12. The Court then statesd, "Plaintiff points to no basis through which process could have been served on her in New Hampshire. Accordingly to the extent New Hampshire's three-year statute of limitations applies to the underlying debt, it never ran in favor of plaintiff." Id.

The Oregon Court construed and analyzed these facts incorrectly and far too restrictively. First, like in this case, New Hampshire was not an appropriate venue. Second, like in this case, the state court defendant was amenable to service of process throughout the applicable statute of limitations period. Third, like in this case, the holding that the limitations period was tolled, even

though service of process on the state court defendant was available, ran contrary to the intended purpose of the tolling statute.

The Oregon Court included no discussion regarding the policy behind the tolling statute, nor even an acknowledgment that the Court's decision effectively allowed for the indefinite postponement of similar lawsuits, something discussed and expressly rejected by the Supreme Court of New Hampshire in Bolduc. Put simply, the District of Oregon decided this aspect of Avery incorrectly.

In Gagnon v Croft, 108 N.H. 329 (N.H. 1967), the Court applied the tolling statute because "no valid service could have been made on" the defendant. Gagnon, 108 N.H. at 331. Such is not true in the instant case.

In Atwood v. Bursch, 107 N.H. 189 (N.H. 1966), the general statute of limitations was not discussed. Defendants cherry-pick the single piece of dicta in the entire opinion that mentions the New Hampshire general statute of limitations. However, the case actually discussed the limitations on a right of action after the death of a party. Atwood, 107 N.H. at 190. Moreover, the case was not a claim similar to the instant case, nor was it even an attempt to reopen the decedent's estate after the statutory period had elapsed. Id. Indeed, it was merely "a bill in equity for an accounting brought by the administratrix in the performance of her legal duties to discover and conserve the assets of the estate of the decedent." Id. Atwood does not control here.

Defendants cite Bolduc even though, as discussed supra, the case supports Plaintiff's position.

Finally, Defendants cite Paine v. Drew, 44 N.H. 306 (N.H. 1862). Paine concerned a case where New Hampshire was the forum state. This difference could not be more important, as it underlies the policy behind the tolling statute, as discussed by Bolduc. Because the instant case is in Florida, the fact that Plaintiff was not amenable to service of process in New Hampshire is

irrelevant and only may be used to distract this Court from the true question here: May Defendants and their client, by suing on a non-negotiable contract choosing New Hampshire law to control and with knowledge that Plaintiff never resided in New Hampshire, claim that New Hampshire's tolling statute should create an infinite statute of limitations, allowing them to file suit whenever they please, however many years have passed, even though Plaintiff could have been served at any point.

The cases cited by Plaintiff above do not apply the tolling statute where some method of service on the state court defendant was available. Herein, Plaintiff was amenable to service of process during the entirety of the time in which Defendants could have filed suit in accord with the New Hampshire statute of limitations. Indeed, Defendants effected such service on Plaintiff. However, Defendants procrastinated to their own peril and detriment. Now they ask this Court to hold that New Hampshire's tolling statute reduces the statute of limitations to superficial words without any force, allowing Defendant to sue at any time they please, regardless of the prejudice that accrues against Plaintiff. Such a result is contrary to the majority rule, New Hampshire Supreme Court precedent, and is patently unconscionable. Defendants' argument must be rejected by this Court.

    **D.**    **Defendants violated the FDCPA by stating a sum certain of attorney fees when the underlying contract provided only for a reasonable fee incurred by Defendants, which requires a judicial evaluation.**

In the state court complaint at issue here (Exhibit A to Plaintiff's Class Action Complaint, Docket # 1), Defendants state in only the third sentence contained therein, "In the event this matter is resolved by way of default a reasonable attorney's fee would be $750.00." See Docket # 1, Exhibit A, p. 3, ¶ 3.

First, and most importantly, the contract controlling the underlying debt (attached as Exhibit C to Plaintiff's First Amended Class Action Complaint, Docket # 53-4) stated

unequivocally that Plaintiff promises to pay "collection costs <u>we incur including, but not limited to, reasonable attorneys' fees</u> and court costs." <u>See</u> Docket # 53-4 (emphasis added). Plaintiff alleges that Defendant attempted to collect reasonable attorney fees that had not been incurred. <u>See</u> Docket # 53, ¶ 21. If these allegations are proven, Defendant will have attempted to collect an amount in violation of 15 U.S.C. § 1692f. Clearly, Plaintiff has stated a claim upon which relief may be granted.

Second, although the controlling contract provides for the recovery of reasonable attorney fees, it does not provide for Defendants to choose unilaterally an arbitrary amount in anticipation of a default. The most relevant case on this issue is <u>Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.</u>, 2005 WL 2180481 (W.D.Mich., Sep. 9, 2005). In <u>Stolicker</u>, the parties did not dispute that the controlling contract provided for reasonable attorney fees and that the defendant requested "a specific amount for attorney fees." <u>Stolicker</u>, 2005 WL at * 3. The Court stated that "[t]he inclusion of a liquidated sum as attorney fees with the principal debt owed altered the terms of the contract between Capital One and Stolicker and violated the FDCPA." <u>Id.</u> at *4.

Discussing the violative conduct, the Court stated, "Claiming that a 'reasonable attorney fee' is a 'sum certain', as Muller did in this case, is a false representation." <u>Id.</u> at *5. "[I]t is clear to the Court that a 'reasonable attorney fee' cannot be a 'sum certain.' A reasonable attorney fee requires a judicial evaluation of the evidence regarding the fee." <u>Id.</u>  The Court continued, "Cases discussing whether a reasonable attorney fee is a sum certain in the context of the federal rules of civil procedure are instructive and establish that a 'reasonable attorney fee' is not a 'sum certain.'" <u>Id.</u> citing <u>Flynn v. Mastro Masonry Contrs.</u>, 237 F.Supp.2d 66, 70 (D.D.C. 2002) ("The amount of attorney's fees, however, is not considered a sum certain as the reasonableness of the fees requested by the plaintiff is a judgment call which only the courts can make."). The Court

concluded, "Harms' statement in his affidavit is false because a 'reasonable attorney fee' cannot be a 'sum certain,'" Id., and held that the defendant violated the FDCPA. Id. at *7.[4]

Defendants herein committed the same violative act as the defendant in Stolicker. Indeed, they stated a sum certain of $750.00 as a "reasonable attorney's fee." To make matters worse, they did not merely state a sum certain, but they predicted what the sum certain would be in the future, expecting that default would be entered. By doing so, Defendants assumed the role of the judiciary and, unilaterally, made the self-serving evaluation of what constitutes a reasonable attorney fee.

Defendant cites Bull v. Asset Acceptance, LLC, 444 F.Supp.2d 946 (N.D.Ind. 2006), though it is inapplicable. There, the plaintiff argued that the *amount* of attorney fees was unreasonable and that, therefore, the debt collector sought to collect more than was provided yb the underlying contract. Bull, 444 F.Supp.2d at 949. Here, however, Plaintiff asserts that the inclusion of an amount of attorney fees violates the FDCPA because the underlying contract provides for "reasonable attorney fees", something that "requires a judicial evaluation of the evidence regarding the fee." Stolicker, 2005 WL at *5. The Southern District of Indiana did not address the argument made by Plaintiff herein and its opinion in Bull is not controlling.

As decided by the only Court to address this issue, Defendants' stating of a sum certain violates the FDCPA. Therefore, Plaintiff has stated a claim as to these violations and Defendants' Motion should be denied.

---

[4]    Defendant attempts to preempt Plaintiff's argument by identifying a distinction without a difference, citing Stolicker and Winn v. Unifund, 2007 U.S.Dist.LEXIS 95705 (D.Ariz. 2007). Indeed, Defendant claims it did not violate the FDCPA because it merely did not misrepresent the underlying agreement, but instead misrepresented and concocted a sum certain of a reasonable attorney's fee "[i]n the event this matter is resolved by way of default." Defendant states that it's client is merely "enforcing its own rights." However, Defendant and its client have usurped the rights of the state court to determine a reasonable attorney, instead presuming to step into the judiciary's shoes and make that determination unilaterally their attempts to collect Plaintiff's alleged debt.

**E.      Defendants' footnoted bona fide error defense requires discovery and is not properly plead or argued in a Motion to Dismiss**

In a three-paragraph footnote to their argument regarding the appropriate state's statute of limitations, Defendants assert a bona fide error defense. This defense requires discovery and cannot be decided without factual support outside the pleadings. For example, Defendants state they acted "on a good faith belief that the statute of limitations had not tolled." This statement is clearly outside the pleadings and is not properly argued in a motion to dismiss. Int'l Marine Research Inst., Inc. v. Rumpel, 434 F.Supp.2d 1304, 1310 (M.D.Fla. 2006).

In this case, no discovery has been completed. Written and oral discovery is needed to respond to Defendants' apparently asserted bona fide error defense.

## III.   CONCLUSION

Defendants have abused the Florida state court system by systematically filing credit card collection cases outside the applicable statute of limitations and by inappropriately asking for attorney fees in a sum determined solely by them without the judicial evaluation required for such a determination.

Defendants assert several arguments that lack merit, as evidenced by the plethora of caselaw ignored by Defendants. The litigation privilege has been rejected nationwide by Courts addressing it within the context of a FDCPA case. Florida courts routinely apply the choice-of-law state's statute of limitations in credit card collection cases. The New Hampshire tolling statute was meant to prevent a defendant from avoiding service of process–not to create an infinite statute of limitations, as is sought by Defendants. Finally, the stating of a sum certain of attorney fees effectively changes the terms of the underlying contract that provides merely for "reasonable attorney fees."

Defendants' arguments should be rejected and their Motions to Dismiss denied.

Respectfully submitted,

<u>s/Donald A. Yarbrough</u>
DONALD A. YARBROUGH, ESQ.     Craig M. Shapiro
Florida Bar No. 0158658          HORWITZ, HORWITZ & ASSOCIATES, LTD.
Attorney for Plaintiff            Illinois Bar No. 6284475 (Admitted *Pro Hac Vice*)
Post Office Box 11842             Attorney for Plaintiff
Ft. Lauderdale, FL 33339         25 East Washington Street, Suite 900
Telephone: 954-537-2000         Chicago, Illinois 60602
Facsimile: 954-566-2235          Telephone: 312-372-8822
donyarbrough@mindspring.com    Facsimile: 312-372-1673
                                craig@horwitzlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.:  08-60177-Civ-Altonaga/Turnoff

MATTHEW K. GAISSER, on behalf
of himself and all others similarly situated,

       Plaintiff,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC,
ROBERT J. OROVITZ, P.A. d/b/a HAYT, HAYT & LANDAU,
ROBERT J. OROVITZ,  and JOSEPH D. ALLEN,

      Defendants.

_____/

## <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that on <u>July 1, 2008,</u> I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                    <u>s/Donald A. Yarbrough</u>
                    Donald A. Yarbrough, Esq.

<u>**SERVICE LIST**</u>

Mr. David P. Hartnett, Esq.
Counsel for Portfolio Recovery Associates, LLC
Hinshaw & Culbertson, LLP
Post Office Box 569009
Miami, FL 33256-9009
Telephone: 305-358-7747
Facsimile: 305-577-1063

<u>Via Notices of Electronic Filing generated by CM/ECF</u>

Mr. Craig S. Hudson, Esq.
Counsel for Robert J. Orovitz, P.A. d/b/a Hayt, Hayt & Landau and Robert J. Orovitz
Marshall, Dennehey, Warner, Coleman & Goggin
Suite 500
1 East Broward Boulevard
Ft. Lauderdale, FL 33301
Telephone <u>954-847-4920</u>
Facsimile 954-627-6640

<u>Via Notices of Electronic Filing generated by CM/ECF</u>